HARRIS and Others *v.* DOE on the Demise of SPENCER.

The 6th article of the treaty made by the *United States* on the 6th of *October,* 1818, with the *Miami* nation of *Indians,* provided that the several tracts of land which the *United States* therein engaged to grant should never be transferred by the grantees or their heirs without the approbation of the president of the *United States.* Pursuant to the treaty certain premises were granted to *B.,* an *Indian* woman, and afterwards the president, upon her petition, gave his approval to her selling a part of the land and to the division of the rest among her children. She did accordingly sell a part of the land, but shortly afterwards died without having made any partition of the residue to her children. *Held,* that the children took the land by descent and could not, therefore, convey it, and that a deed of conveyance from them was not voidable merely, but void.

A party whose land has been sold at sheriff's sale upon an execution against him, cannot, in ejectment to recover possession of the premises, show that his own title was defective, to prevent a recovery; but third persons in possession may.

APPEAL from the *Allen* Circuit Court.

SMITH, J.—This was an action of ejectment commenced by the appellee. At the *February* term of the Circuit Court, in 1848, *Samuel Harris* applied and was admitted as defendant. At the *October* term following, by consent of the plaintiff's lessor, *Steinberg* and *Fell* were made defendants with *Harris* upon the usual terms.

At the said last-mentioned term of the Circuit Court, there was a trial by jury which resulted in a verdict for the plaintiff. A motion for a new trial was overruled and the plaintiff had judgment.

All the evidence is set out in a bill of exceptions.

The plaintiff's lessor claimed title under a sheriff's deed, made pursuant to a sale of the premises in controversy by virtue of an execution which had issued on a judgment against *Samuel Harris,* in favor of one *Dawson,* rendered by the *Allen* Circuit Court in *October,* 1838.

The plaintiff also gave in evidence a deed, dated *May* 1st, 1834, executed by *Elisha B. Harris,* and wife, conveying the premises to *Samuel Harris,* with covenants of general warranty.

There was also proof that *Elisha B. Harris* had been in

possession of the premises prior to the commencement of this suit.

The plaintiff further proved that the title of *Elisha B. Harris* was founded on a deed dated *January* 1st, 1831, executed to him by certain persons as the heirs of one *Josette Beaubien*, to whom the premises in question had been granted by the *United States* pursuant to a treaty with the *Miami* nation of *Indians*, made on the 6th of *October*, 1818.

The 6th article of that treaty provided that the several tracts of land, which the *United States* therein engaged to grant, should never be transferred by the grantees or their heirs, without the approbation of the president of the *United States*.

It was proved that *Josette Beaubien*, about the year 1825, petitioned the president of the *United States* for authority to sell a portion of the land granted to her to procure means for her support, and to divide the remainder among her children. This application was granted by the president of the *United States*, and his approval, under the authority vested in him by the 6th article of the treaty, to sell a portion of the land and to divide the remainder among her children, was given.

*Josette Beaubien* did accordingly sell a portion of the land, but shortly after, in the same year, 1825, died, without having made any partition of the remainder to her children. Those children made their deed to *Elisha B. Harris* as heirs, and not as the grantees, of their mother, *Josette*.

It is contended by the counsel for the defendant in error, that the consent of the president of the *United States* to the alienation of the premises, having been once given, no further approbation was necessary to enable the heirs of *Josette* to make the conveyance to *Elisha B. Harris*. It is said the estate existed in the heirs in the same quality and to the same extent, whether they took as purchasers under a division or by descent. We do not know that such would be the case. If their mother had made a division, she might or might not have made an equal one.

The restriction upon the ability of the *Indians* to convey the lands granted to them by the treaty, was intended for their benefit, and such restrictions have always received a liberal construction. It is founded upon the supposition that they are incompetent to traffic with the whites upon equal terms, as a general rule, and from their simplicity and ignorance liable to be easily imposed upon. The government, in giving lands to them, humanely desired to protect them from such imposition, and provided that they should not transfer them, unless the president of the *United States* should be satisfied that the transfer was a judicious one, and made for a reasonable consideration.

The president, in giving his consent to a petition for authority to sell such lands, would undoubtedly be influenced by the particular circumstances of the case, such as the capacity or discretion of the person desiring such authority, the object for which the sale was to be made, &c. We do not think it would be proper to apply his consent given to one person to sell to a sale by another person. In this case, the mother, *Josette*, may have been a very competent person to make sale of the premises, and her heirs totally incompetent. It is not to be inferred that because the president consented to a sale by *Josette* that he would, therefore, have consented to a sale by her heirs, and as *Josette* did not exercise the authority given to her to divide the land among her children, the latter must be considered as having taken it by descent and with the restriction upon their ability to transfer it provided by the treaty. *Josette* may, herself, for anything we know to the contrary, have finally concluded that her children, or some of them, were unfit to be entrusted with the power to convey their land, and for that reason purposely refrained from making a division among them.

It is also urged that a subsequent approbation of the president might have made the deed of *Josette's* heirs good, and that it was voidable merely. There is, however, no proof of any such subsequent approbation.

We think, therefore, that in this case, the title to the premises in controversy is shown to be outstanding in

the heirs of *Josette Beaubien*, and the plaintiff must fail unless the defendants are precluded from availing themselves of this fact. It is well established that an execution-defendant cannot avail himself of this species of defence against a purchaser at a sale under the execution, and had *Samuel Harris* been the sole defendant, the plaintiff would have still been entitled to recover his term, for *Samuel Harris* would not have been permitted to resist the claim of the plaintiff to be placed in possession by alleging that his own title was defective.

But the other two defendants, *Steinberg* and *Fell*, do not stand upon the same ground, and it being admitted that they were in possession of the premises, they cannot be turned out without a good title being shown in the plaintiff. The judgment must, consequently, be reversed.

*Per Curiam.* — The judgment is reversed with costs. Cause remanded, &c.

*R. Brackenridge* and *D. H. Colerick*, for the appellants.
*J. B. Howe*, for the appellee.