Monroe *v.* Skelton.

*A. Iglehart* and *J. E. Iglehart*, for appellant.

*J. M. Shackelford* and *W. F. Parrett*, for appellee.

---

MONROE *v.* SKELTON.

CONTRACT.—*Mistake.*—*Correction of.*—To entitle a plaintiff to have a mistake
in reducing the terms of a contract to writing corrected, it is not necessary
that he should allege and prove that the mistake was such as he could not
have obtained a knowledge of by reasonable diligence when he was put on
inquiry.

SAME.— *Reformed.*—*Specific Performance.*—Although a plaintiff cannot have
specific performance of a written contract, with a variation upon parol evi-
dence, still he may, under the code, in the same action, upon parol evidence,
have the written contract reformed and enforced.

SAME.—*Suit to Cancel Deed.*—*Title to Land.*—Where the object of a suit is to
reform a contract, and to set aside and cancel a sheriff's deed taken by the
defendant, in violation of the terms of the agreement, the deed conveying
whatever interest the plaintiff had in the property, it is not necessary for the
plaintiff to show a title to the land conveyed to have been in him, to entitle
him to the relief he demands.

APPEAL from the Gibson Circuit Court

WORDEN, C. J.—This was an action by the appellee against
the appellant.   Issue, trial, finding, and judgment for the
plaintiff.

Monroe *v*. Skelton.

Two errors only are assigned: first, in overruling a demurrer to the complaint; and, second, in overruling a motion for a new trial.

The complaint is long, but we will make a condensed statement of it, sufficient to present the point in reference to which objection is made.

It alleges that certain described lands of the plaintiff were sold on execution issued upon a judgment rendered in that court against the plaintiff, and that the defendant became the purchaser thereof for the sum of ten dollars; that at the time of the sale the plaintiff was indebted to the defendant in two notes secured by mortgage on the premises, and the land was subject to some other incumbrances; that before the time had expired for redemption, for the purpose of settling the debt due from the plaintiff to defendant, and other mortgages on parts of the property, and also for the purpose of paying to and settling with the defendant for the sum necessary to redeem the property from the sale, it was agreed between the plaintiff and the defendant, that the plaintiff and his wife should convey to the defendant a specified portion of the land, the deed to be executed as soon thereafter as practicable; in consideration whereof, the defendant was to pay a mortgage on the land, due to one Smith for about eight hundred dollars, also a mortgage to one Donald, about forty dollars; also to cancel and surrender the two notes and mortgages held by the defendant against the plaintiff before mentioned; it was also agreed that the above mentioned conveyance from the plaintiff and his wife to the defendant was to be in full payment of the sum due the defendant as the amount necessary to redeem the land from the sale, and that the defendant should have no further right or title to the land by virtue of the sheriff's sale, or the certificate of purchase; it was further agreed that the notes and mortgages held by the defendant against the plaintiff should not be surrendered up and cancelled until all judgments, which were liens upon the property, should be fully paid and satisfied; that the contract was

reduced to writing and executed by the parties in duplicate, a copy of which is set out, "but by error and mistake in the drafting of said writing, it was omitted to be stated therein that the conveyance of the real estate, so to be executed by the plaintiff to the defendant, was to be in full payment to the defendant of the sum due to the defendant as the amount necessary to redeem the real estate so sold by the sheriff as aforesaid from said sale, while in truth, and in fact, such stipulation and agreement was a part of said contract and agreement, and should have been so expressed in said writing."

The complaint further avers that the plaintiff, with his wife, did execute and deliver to the defendant the conveyance stipulated for, satisfied the judgments, and fully performed his part of the contract; but the defendant, well knowing the premises, and wrongfully intending and contriving to cheat and defraud the plaintiff, and well knowing that by the conveyance of the plaintiff and his wife, to the defendant as aforesaid, the property had been redeemed from said sheriff's sale, did, at the expiration of the time allowed by law for redemption, procure a deed for the premises so purchased on execution from the sheriff, thereby fraudulently intending to cheat and defraud the plaintiff out of that part of the property not conveyed by the plaintiff and his wife to the defendant, as aforesaid; that the plaintiff has requested the defendant to convey to him the property last mentioned, which he refuses to do, but avows his intention to keep and hold the title to the same to his own use; wherefore, etc.; prayer for reformation of contract, and for specific and general relief.

Two objections are made to the complaint, which will be considered in their order.

First, "that to entitle a plaintiff to have a mistake in a written agreement corrected, he must allege and prove that the mistake was such as he could not have obtained a knowledge of by reasonable diligence when he was put on inquiry," citing 1 Story's Equity, sec. 3, 146, 149. The objection, we think, is not well taken. The authority cited does

not sustain the position. The author cited is discussing mistakes of fact in relation to the subject-matter of the contract, and not mistakes in putting the contract into writing.

Second. "It is a principle of equity jurisprudence that parol evidence is admissible to rebut, but not to raise, an equity. To resist specific performance, a defendant may show that the written contract, by mistake, does not contain all the agreement intended, but a plaintiff cannot have specific performance of a written contract with a variation upon parol evidence."

We concede that a plaintiff cannot have "specific performance of a written contract with a variation upon parol evidence," but the written contract may be reformed upon parol evidence, and then specifically enforced as reformed; and since the code, it may be reformed and enforced in the same action. 2 G. & H. 98, sec. 71. *Rigsbee* v. *Trees*, 21 Ind. 227; *Rhode* v. *Green*, 26 Ind. 83.

There can be no doubt that if the written agreement had contained the portion of the contract alleged to have been, through mistake, omitted, the plaintiff would have been entitled to relief against the title thus sought to be acquired by the defendant through the sheriff's deed. The objections to the complaint are both insufficient.

The question on the motion for a new trial relates alone to the sufficiency of the evidence to sustain the finding. The evidence is, to be sure, in some respects conflicting, but we think it is sufficient to sustain the finding. The general facts of the case were fully proved. The nature and general features of the transaction were such as to require no very strong extrinsic evidence to show that it was the intention of the parties that, in virtue of the arrangement made, the right of the defendant, under his purchase at the sheriff's sale, was to be surrendered. The plaintiff swears that it was agreed that the redemption money was to be considered as paid. The plaintiff, with his wife, conveyed to the defendant one hundred and twenty acres of the land, leaving

only eighty acres in himself. The amount originally paid by the defendant for the whole land was only ten dollars. The whole land, consisting of several parcels, and containing two hundred acres, was offered and sold altogether, without having been offered in parcels, and bid off at the nominal sum above stated, as is shown by the sheriff's deed. The entire arrangement between the parties carries with it the irresistible inference that it was the intent of the parties that the defendant should have the one hundred and twenty acres, free from all liens, except such as he assumed to pay, and that the plaintiff should retain the eighty acres free from any claim of the defendant, on account of his purchase at the sheriff's sale. There can be no doubt that the plaintiff so understood the contract, and supposed, until he learned that the defendant had taken the sheriff's deed, that the omitted portion of the contract had been embodied in the writing. And we think it may be fairly inferred from the statements and conduct of the defendant, that he also understood the contract or arrangement as a satisfaction of the redemption money, and that he no longer had any claim upon the land other than that so conveyed to him by plaintiff and his wife; and that he supposed that the omitted stipulation was embodied in the contract, or that such was the legal effect of the contract as written; and hence it may well be inferred that the omission was the mutual mistake of both parties. See *Nevius* v. *Dunlap*, 33 N. Y. 676; *Rider* v. *Powell*, 28 N. Y. 310.

The sheriff's deed bears date August 19th, 1869. The plaintiff testifies, amongst other things, as follows: "When I talked to Monroe, which was in August, he said he would cancel the mortgages, and he did not know that holding a sheriff's deed could do any harm. I demanded a quit claim deed from Monroe for the eighty acres, but he said he had been put to about thirteen dollars expense. This I offered to pay him if he would make the deed. He said he must see his lawyer first. This was in August, a few days after I discovered the mistake. Afterward, Monroe told me that

his lawyer had told him that it could do him no good now, but might be of advantage some day, and he refused to make me the deed."

John C. Holcomb testifies that, "on the evening of the day the agreement was made, I saw Monroe on the cars and asked him if all the matters between him and Skelton had been settled; he told me everything had been settled between them; I saw Monroe on another occasion, when he said to me again that all matters between him and Skelton had been settled."

On cross examination he said, "I do not know that the eighty acres of land in controversy was particularly mentioned; it was my understanding that was settled; do not remember that Monroe used language to that effect; as near as I can remember, Monroe said it was all settled between them." The statements and conduct thus imputed to the defendant are not denied by him.

We think it may be fairly inferred from the statements of the defendant, that at the time the contract was made he understood it as embracing everything between the parties, including the redemption of the land; and that afterward, upon recurring to the terms of the written contract, and discovering that that was not as full as he supposed, or as the real contract between the parties, he concluded that he would take the sheriff's deed with a view to the possibility of making it available.    If such was not his understanding of the contract, why did he say to the plaintiff, when spoken to on the subject, that "he did not know that holding a sheriff's deed could do any harm;" that "he had been put to an expense," etc.; that "he must see his lawyer" before he would quit claim to the plaintiff; and after seeing his lawyer, that he told him "it could do him no good now, but might be of advantage some day." If the contract had not embraced the redemption of the land, and the defendant had not so understood it, when spoken to on the subject by the plaintiff, why did he not say, "I bought the land at sheriff's sale; the time for redemption expired, and you failed to redeem

it; I therefore became entitled to the deed from the sheriff, and, having procured that, the land is mine." This or similar language would have been expected from a man who was not conscious that he had no right to the land.

In addition to the evidence above stated, as to what the contract really was, another witness, Silas Holcomb, testifies as follows: "Know the parties; was present in January, 1869, a short time during the day, when they were talking about a trade in reference to Mr. Skelton's lands and mortgages held against them by Mr. Monroe; they talked some time in my presence; it was my understanding that Mr. Monroe was not to claim the eighty acres now in controversy, and I understood the redemption money, from the sheriff's sale to Monroe, was to be considered as paid in the agreement; they did not conclude the trade while I was with them; was not present when the written agreement was drawn up between them."

On the contrary, the defendant swears that the contract was drawn up just as it was agreed upon; and the scrivener, Peter Maier, who was the attorney for the defendant, and was trying to secure money for him, as he testifies, swears that the contract was drawn just as it was stated over to him by the parties.

We are not inclined to reverse the judgment for the want of sufficient evidence to sustain the finding, unless required to do so upon a point that remains to be yet considered.

On the trial, it appeared that, previous to the contract between the parties, the eighty-acre tract in controversy had been sold and conveyed by the auditor of the county to Silas Holcomb, by virtue of a school mortgage, and that on the 14th of January, 1870, the said Silas conveyed the same to the plaintiff. Thus Holcomb held the title at the commencement of the suit, but it had been reconveyed to the plaintiff at the time of the trial.

It is insisted that the plaintiff must have owned the land at the commencement of the action in order to recover. If this were an action to recover possession of the land, the

point would be well taken.    But the object was to reform
the contract, and set aside and cancel the deed from the
sheriff to the defendant, and quiet the plaintiff's title as against
that deed, and this was all the relief obtained by the judg-
ment below.

Suppose the plaintiff never had any title to the land at all,
could the defendant successfully set up that fact as a defense
to this suit?    The defendant purchased at sheriff's sale the
right which the plaintiff had in the land, whatever that right
might be, and upon receiving an equivalent for the redemp-
tion money, agreed impliedly or expressly to surrender that
right back to the plaintiff.   In violation of that agreement,
the defendant took the sheriff's deed, and the plaintiff brought
this action to set it aside.   Can the defendant be heard to
say in such case that the plaintiff had no title to the land, in
bar of the action?   Cases quite analogous have been decided
by this court.   Thus, it has been held that, upon a sale of
land on execution, the judgment debtor cannot set up his
own want of title to defeat an action by the purchaser to
recover possession.   *Hobson* v. *Doe,* 4 Blackf. 487; *Harris* v.
*Doe,* 3 Ind. 494.   See, also, *Brownfield* v. *Weicht,* 9 Ind. 394.

In judicial sales there is no warranty of title.   The object
of the suit was to put the plaintiff in the position which he
occupied, in respect to the title to the land, before the sale
by the sheriff, and not to settle the title as between himself
and any third person.   This object he should be permitted
to accomplish without being required to litigate, or in any
manner settle the title as between himself and any third per-
son.   A third party claiming the land adversely to the plain-
tiff can have no interest in this action whatever, because the
judgment does not affect him.

We are of opinion, that in an action for the purposes here-
in sought to be accomplished, the defendant cannot make
any question as to the ultimate title to the land; and that the
plaintiff is entitled to the remedy, as against the defendant,
without having his title in any manner put in issue as between

himself and third persons, who are neither bound by, nor can take advantage of, the judgment.

If we are right in this conclusion, it follows that the objection made in this respect cannot be sustained.

The judgment below is affirmed, with costs.

*C. A. Buskirk,* for appellant.

*A. C. Donald,* for appellee.