Koons, Guardian, *et al. v.* Blanton.

## No. 14,702.

### KOONS, GUARDIAN, ET AL. *v.* BLANTON.

DEED.—*Reformation.*—A court of equity will reform a written instrument. not only in cases of mutual mistake, but also when, by the fraud of one of the parties to the instrument, the language inserted in it is materially different from that agreed on.

SAME.—*Fraudulent Omission.*—*Fraud of Husband.*— *Wife's Excuse for not Having Deed Read.*—Where a husband, after deserting his wife, proposed to her to join him in conveying a tract of land to their children, reserving to her the rents and profits during her life, and the wife, who was unable to read, in good faith joined in the execution of the deed, but the husband procured the deed to be so written that it would convey the fee to the children without the reservation of rents and profits agreed upon, which deed was signed by the wife upon the representation of the husband that it was prepared in accordance with the agreement,

*Held,* that the wife had a right to rely upon the husband's sincerity, and that a sufficient excuse for her not having the deed read is shown.

SAME.—*Laches.*—In a suit by the wife for a reformation of such deed, the fraud was admitted and the answer alleged that the suit was not instituted until nine years after the fraud was discovered; that the wife surrendered her possession of the land at the request of the childrens' guardian; that the guardian rented the land, and expended part of the rents in the improvement of the land and part in compensating the wife for the maintenance of the children; that the guardian, to make the improvements and provide for the maintenance of the children, had anticipated rents and profits for several years in advance.

*Held,* that the delay of nine years in bringing the suit was not such laches as made the wife's equity stale and barred relief.

SAME.—*Husband and Wife.*—*Separation*—*Judgment for Alimony no Bar to Action for Reformation.*—A judgment for alimony recovered by the wife in a suit for divorce after the execution of the deed is no bar to the action for its reformation, as there is no question of property rights between the husband and wife.

PRACTICE.—*Equity.*—*Submission to Jury of Questions of Fact.*—*Objection to Manner of Submission.*—*Interrogatories and Instructions.*—Where, in a suit in equity, the court submits questions of fact to the jury, it is not bound by their verdict, which is merely advisory, and may disregard their findings. The parties can not complain of the manner in which the questions of fact are submitted to the jury, or object to the form of the interrogatories or instructions.

From the Henry Circuit Court.

*J. Brown, W. A. Brown* and *W. E. Niblack,* for appellants.

*C. S. Hernly* and *J. M. Morris,* for appellee.

McBRIDE, J.—On the 28th day of January, 1878, one Michael Ricker resided in Henry county, where he owned and occupied a tract of land. The appellee, Mary Blanton, was his wife, and appellants Lillie E., Viola and Hattie Ricker were their children. On said day, the husband and wife joined in executing a warranty deed conveying the land in question to their said children. Michael Ricker had previously abandoned his family, and was, at the time, living in a state of adultery.

This suit was commenced on the 23d day of August, 1887, by appellee, who alleges in her complaint, in substance, that, prior to the making of said deed, her said husband, pretending to be desirous of providing for her support, and for the support of their said children, proposed to her to join him in conveying said land to said children, reserving to her, in lieu of her inchoate interest in said land as his wife, the rents and profits thereof for the term of her natural life; that being at the time greatly distressed in mind because of her said husband's conduct, and his abandonment, but believing his said proposition to be made in good faith, she consented to join in the execution of such deed; that thereupon said Michael procured a notary to prepare the deed, and, with the intention of cheating and defrauding her out of her interest in said land, he instructed and procured the notary to so write the deed that it would convey said land in fee to said children, without any reservation to her of rents and profits, or of any interest therein; that he thereupon represented to her that the deed was prepared in accordance with their agreement, reserving to her said rents and profits, and that she, being unable to read or write, and in great mental distress, but relying on his assurance that, as prepared, said deed did reserve to her the rents and profits

of the land for and during her life, she signed and acknowledged it; that she received no consideration for the deed; that her said husband having abandoned his said family and made thereafter no provision whatever for their maintenance, appellant Benjamin F. Koons was appointed guardian of said children, and as such guardian is in possession of said land. The prayer of the complaint asked for the reformation of the deed and for other equitable relief.

The court having overruled a demurrer to the complaint, the appellants excepted, and answered in five paragraphs. A demurrer to the fifth paragraph was sustained, to which ruling appellants excepted.

This paragraph is as follows :

" 5. The defendants, for further answer, say that on the — day of December, 1884, one Charles S. Hernly was, by the Henry Circuit Court, duly appointed as their guardian, and as such duly inventoried and took charge of the land named in the complaint; that in the month of March, 1881, said guardian rented said premises to one David Huddleson for one year from that time, and at the time of said renting the plaintiff and these defendants were in possession of the same; that said guardian notified the plaintiff that he had so rented said premises as the property of these defendants, his then wards, and requested her to vacate said premises, and that, for the purpose of letting said lessee into said premises pursuant to said contract, the plaintiff did then and there move out and vacate said premises, and allowed said tenant to take possession thereof, and has ever since that time remained out of possession ; and the said Hernly, so long as he remained the guardian of these defendants, and his successor, B. F. Koons, who became the succeeding guardian, have ever since had possession and control of said premises, and all the rents and profits thereof as guardian of these defendants, and that the said B. F. Koons, as the guardian of these defendants has, by

clearing, ditching, and otherwise improving said premises, expended and incurred a liability for at least five hundred dollars for needed improvements and betterments of said premises, all to the knowledge of the plaintiff; that on the 22d day of February, 1879, the plaintiff obtained a divorce from her said husband Michael Ricker, and a judgment for alimony for $800; that since her said divorce she has had the custody of these defendants up to the year 1887, at ·which time she intermarried with one ——— Blanton, her present husband; that during all the time she remained single she demanded and received from each of the defendants' guardian compensation for keeping and caring for said defendants; that for the last six or seven years she has regularly received compensation for keeping said children; that said defendants never had any means, other than the real estate described in the complaint, and that all payments made to her were derived from the rents of said real estate, of all of which she had full knowledge, and that in order to compensate her for keeping these defendants, for the time that she had their custody, and to make said improvements, the present guardian has anticipated the rents and profits of said premises for a number of years, in the future, to get money for that purpose. Wherefore they say the plaintiff ought not to have and maintain her action."

As the ruling on the demurrer to the complaint presents one of the questions raised by the demurrer to the fifth paragraph of answer, we will consider the two together. No question as to the statute of limitations is raised in this court by counsel on either the complaint or the answer, but the appellants insist that, as the deed was made on the 28th day of January, 1878, while this suit was not commenced until August 23d, 1887, it was incumbent on the appellee to account for the delay; that the complaint does not show when the fraud was discovered, and it will, therefore, be presumed to have been discovered at once, and that the delay in asking for relief is such laches as makes her equity

Koons, Guardian, *et al. v.* Blanton.

stale and bars relief. They also say that the answer shows affirmatively that the appellee had notice soon after the deed was made of the claims made by the guardian of the children, and not alone by delay, but by her acts signified affirmance of and acquiescence in the deed as made; also, that the facts pleaded in that paragraph of answer, and by the demurrer admitted to be true, estop her from asking for a reformation of the deed.

It is also urged by appellants that the complaint, irrespective of the question of delay, does not show such facts as would justify interference by a court of equity for the reformation of the contract, for the reason, as stated in their brief, that " the complaint fails to show a mutual mistake. It fails to show any excuse for not having the deed read."

It is not alone in cases of mutual mistake that a court of equity will reform a written instrument. That relief will be granted where by the fraud of one of the parties to the instrument the language inserted in it is materially different from that agreed upon. Pomeroy Eq. Jur., section 910.

We think, also, that a sufficient excuse is shown for not having the deed read. The relations between the parties were such that, notwithstanding the husband's desertion of the wife, when he proposed to her to convey his land so that thereafter he should have no further interest in it, and that she and the children should be its sole owners, she, being unable herself to read, had a right to rely on his sincerity and on his assurances that the deed as prepared under his direction did reserve to her a life-estate, while conveying the fee to the children.

The question as to laches is much more difficult. No principle of equity jurisprudence is better established or more familiar than that " Equity aids the vigilant, not those those who slumber on their rights." This principle is designed to promote diligence on the part of suitors, to discourage laches by making it a bar to relief, and to prevent

the enforcement of stale demands.    Pomeroy Eq. Jur., section 418 ; Cooley Torts, star p. 504.

Among the cases in which this principle is most frequently applied are those in which the suitor seeks the rescission of a contract, or the specific performance of a contract, or in seeking relief by injunction.   In such cases, acquiescence in the wrongful conduct complained of may, and often does, operate as a *quasi* estoppel, barring his right to equitable relief.   What delay will render a claim stale, or will be treated as conclusive evidence of acquiescence, or will be such laches as will deny relief, must depend largely upon the special circumstances of each particular case.   The statute of limitations prescribes definite periods within which certain actions must be brought or they will thereafter be barred, but the limits of excusable and of inexcusable delay, as affecting the rights to relief from a court of equity, can only be defined by general rules, admitting of many exceptions.

Courts of equity have never attempted to lay down rules, fixing any definite or specific period of delay that shall, like the statute of limitations, bar the right to equitable relief from fraud, and it is manifestly impossible for them to do so.

Generally, it is said, one must not sleep upon his rights, but must act promptly upon discovering the fraud.   This is especially true when the relief sought is the rescission of a contract ; and in all cases, one may not, after the discovery of the fraud, delay until the rights of innocent third parties have intervened ; or even until the other party to the transaction becomes justified in believing that the fraud is condoned, and thereafter places himself in such situation that he would sustain loss if the contract were rescinded, for one may even be estopped to repudiate a fraud as against the wrong-doer.

Of the doctrine of laches, it is said by Lord SELBORNE, in the case of *Lindsay Petroleum Co.* v. *Hurd*, L. R. 5 P. C. 221 :   " The doctrine of laches in courts of equity is not

an arbitrary or a technical doctrine. Where it would be practically unjust to give a remedy, either because the party has, by his conduct, done that which might fairly be regarded as equivalent to a waiver of it, or where by his conduct and neglect he has, though perhaps not waiving that remedy, yet put the other party in a situation in which it would not be reasonable to place him if the remedy were afterwards to be asserted, in either of these cases, lapse of time and delay are most material. But in every case, if an argument against relief, which otherwise would be just, is founded upon mere delay, that delay of course not amounting to a bar by any statute of limitations, the validity of that defence must be tried upon principles substantially equitable. Two circumstances, always important in such cases, are, the length of the delay and the nature of the acts done during the interval, which might affect either party and cause a balance of justice or injustice in taking the one course or the other."

In discussing the effect of delay as indicating acquiescence, and estopping a party from asserting his right to equitable relief, the author of Pomeroy's Equity Jurisprudence says (section 817) : " In order that this effect may be produced, the acquiescence must be with knowledge of the wrongful acts themselves, and of their injurious consequences ; it must be voluntary, not the result of accident, nor of causes rendering it a physical, legal, or moral necessity, and it must last for an unreasonable length of time, so that it will be inequitable even to the wrong-doer to enforce the peculiar remedies of equity against him, after he has been suffered to go on unmolested, and his conduct apparently acquiesced in. It follows that what will amount to a sufficient acquiescence in any particular case, must largely depend upon its own special circumstances."

There are cases where silence is itself a fraud. 1 Bigelow Frauds, 590. And mere silence alone, unaccompanied by any fraudulent intent, may estop. Pomeroy Eq. Jur., section 818.

So far as any question is presented to us on the complaint, and on the fifth paragraph of the answer, it stands admitted that the fraud was, in fact, committed, and that the appellee did, in fact, execute the deed, believing, in good faith, that it contained the clause agreed upon, securing to her the rents and profits of the land during life. The demurrer to the complaint necessarily admits this, and the answer in question, by not denying, also admits, and seeks to avoid it.

As the question is presented on the complaint it involves only the question of time. Was the delay so long that it is fatal?

The additional facts brought in by the answer, showing the appointment of the guardian, the renting by him of the land, the surrender of possession to the tenant by the appellee, the expenditure of rents in the improvement of the land, and in compensating appellee for the maintenance of the children, all tend to show knowledge by the appellee of the claim made by the guardian in behalf of the children, and tend strongly to indicate acquiescence therein. None of these facts have in them, however, any of the quality of an estoppel, save such as arises out of the apparent acquiescence of appellee in the claim of appellants. Nor is there anything in the fact that the guardian, to procure money to make said improvements, and provide for the maintenance of the children, has anticipated the rents and profits of the estate for several years in advance, which should, of itself, tend to estop her. Nor is the question affected by the fact that the money expended for the support of the children was paid to the appellee.

We think if the children had been possessed of any other estate, and their guardian had expended it, or any material part of it, in the improvement of the land, relying upon the apparent absolute ownership indicated by the deed upon its face, it would be otherwise, but the answer expressly avers that the children had no other estate. The position of appellants as indicated by their answer, then, is

in effect this : " We admit the fraud charged by appellee, and that, in equity, if she had moved with greater promptness she would have been entitled to the correction of the deed, and to the rents and profits, but by her delay we have had the benefit of her rents and profits for many years. A portion of them our guardian has used to permanently improve and enhance the value of the fee in the land, which is all that equitably belonged to us, and with the balance he has partially provided for our support. We have not only thus appropriated to our own use all her rents and profits in the past, but have anticipated them for several years in the future, and because of her complaisance and long acquiescence in our appropriation of her property she is now estopped to claim her own." Stated thus, the equities of the appellants do not seem to be very strong.

We are inclined to think that the rule of diligence applying to an action for the rescission of a contract and that applying to an action of this character should be, and is, materially different, and that that which will be fatal laches in one case will not bar recovery in the other. Here the rights of no innocent third parties have intervened, and the grantees of the fee have not suffered, but have largely profited by the delay.

This is clearly a ease where we may apply the language of Lord Selborne above quoted.

The resistance to relief which would otherwise be just is founded upon mere delay and apparent acquiescence. The validity of the defence must be tried upon principles substantially equitable. Consider the length of the delay and the acts done in the interval, and where would the balance tend of justice or of injustice in taking the one course or the other? Wherein will there be injustice or inequity done to appellants in now making the correction ?

One other question is argued by the appellants on the answer. The answer alleges that after the execution of the deed the appellee was divorced from her husband and re-

covered a judgment for $800 alimony.  As this decree set-
tled all property rights between the husband and wife, appel-
lants urge that the judgment for alimony bars this action.
There is here no question of property rights between the
husband and wife.  She affirms the deed made by them and
insists upon that which she says the deed equitably gives
her.  We conclude that the court did not err in overruling
the demurrer to the complaint, or in sustaining the demurrer
to the answer.

The appellants also insist that the court erred in its conclu-
sions of law, in that it overruled their motion for a judgment
in their favor on the special findings.  By the error thus as-
signed the same questions are presented that we have con-
sidered in passing on the pleadings, and it is of course un-
necessary to consider them further.

They have also assigned as error the action of the court in
overruling their motion for a new trial.

They insist that the finding is not sustained by sufficient
evidence.  There being evidence tending to support the find-
ing upon all material questions, we will not set it aside.

They also urge that the court erred in the manner in which
questions of fact were submitted to the jury.  The cause is
one of equitable cognizance, and the parties were not entitled
to a jury.  The court, however, did, for its information, sub-
mit certain questions to a jury.  Having announced its in-
tention of so doing, the appellants insisted that before em-
panelling the jury the court should formulate the questions
to be submitted, and that the jury should then be sworn to
try the questions thus presented.  This the court refused to
do, but announced that after the empanelling of the jury
the parties should proceed with the trial, introduce their ev-
idence, and that the court would then, after hearing the ev-
idence, prepare and submit to the jury such questions as it
desired their advice upon, and would also allow the parties,
if they desired, to prepare and submit additional questions.

This course the court pursued over appellants' objection, and they urge it as erroneous.

While the course pursued by the court is not in accordance with the usual practice of courts of equity in the submission of questions of fact to a jury, there is no available error in it.

The verdict of the jury in such cases has no binding force on the court, and is merely advisory. The court may disregard all the jury's findings. Having formulated questions to be answered by the jury, the court may, after hearing the evidence, discharge the jury at once without a verdict, and decide the case without their advice; or, after hearing the evidence, additional questions may be submitted. The jury in such cases are not sworn to answer any specific questions, but that they will true answers return to such questions of fact as may be submitted to them by the court, according to the law and the evidence.

Appellants also complain that some of the interrogatories submitted to the jury were improper in form, and that the court did not submit to them interrogatories covering what they regard as the controlling question of fact involved in the case.

As the findings of the jury were entirely without controlling influence, it is immaterial in what form they were submitted to the jury; nor is it material how few or how many the questions actually submitted, or whether they were, or were not, controlling questions. The court made special findings of the facts, and whether he was, or was not, aided in his finding by the answers returned by the jury, his findings, and not the answers returned by the jury, are decisive of the questions of fact involved.

What we have said on this question also disposes of alleged error of the court in instructing the jury. We need not inquire whether the instructions given were right or wrong. The jury are in such cases empanelled to advise the court on questions of fact. Whether the advice they give

is right or not, or whether they are, or are not, erroneously instructed with reference to the manner in which to reach their conclusion is not material provided the court reaches correct and just conclusions.

The court decreed the correction of the deed, and required the guardian to account for the rents collected. The guardian thereupon submitted an account showing the amounts collected and how disbursed. The court allowed him credit for all disbursements, and compensation from the same for his services, and also by the decree protected the guardian as to the rents anticipated, as averred in the answer, the amount of rent thus anticipated being shown to be the sum of $468.98.

We find no error in the record. Substantial justice seems to have been done to all the parties by the decree.

The judgment is affirmed, with costs.

Filed April 21, 1891; petition for a rehearing overruled Mar. 12, 1892.