## EARL ET AL. v. VANNATTA ET AL.

[No. 3,939.    Filed October 8, 1902.]

DEEDS.—*Mistake of Fact.*—*Reformation.*—Where the parties to a deed erroneously supposed that the description used therein applied to the land intended to be conveyed, the mistake is one of fact which may be reformed.  *pp. 537, 538.*

SAME.—*Reformation.*—*Complaint.*—*Pleading Antecedent Contract.*—In a suit to reform a deed because of a mistake in the description of the land intended to be conveyed, a complaint alleging that on a certain date the grantor for a stipulated consideration contracted to convey, and at a subsequent date did convey certain land, sufficiently pleads the antecedent contract.  *p. 539.*

SAME.—*Reformation.*—*Complaint.*—*Demurrer.*—Where a complaint is sufficient both for the reformation of a deed and possession of real estate, there is no necessity on demurrer to determine whether the issue as to reformation or possession shall control, except in so far as delay in bringing the action is concerned.  *pp. 539-541.*

SAME.—*Reformation.*— *Complaint.*— *Demurrer.*— *Laches.*—In a suit to reform a deed because of a mistake in the description of the land intended to be conveyed, and to recover possession of the land erroneously included, a complaint will not be held bad on demurrer because of delay in bringing the suit, where the rights of third parties have not intervened, and the defendant has not suffered, and will not suffer any injury.  *pp. 542-544.*

SAME.—*Reformation.*—*Complaint.*—*Demand.*—Where in a suit to reform a deed possession is also asked, no previous demand is necessary.  *p. 545.*

From Benton Circuit Court; *J. M. Rabb*, Judge.

Suit by Martha J. Earle and another against William S. VanNatta and others to reform a deed, and for the recovery of possession of real estate. From a decree for defendants, plaintiffs appeal. *Reversed.*

*E. P. Hammond, W. V. Stuart* and *D. W. Simms,* for appellants.

*C. M. Snider, D. Fraser, W. S. Isham, B. K. Elliott, W. F. Elliott* and *F. L. Littleton,* for appellees.

ROBINSON, J.—Suit by appellants to reform two deeds of conveyance, and to recover possession of real estate.

Appellees' several demurrers to the complaint were sustained. The complaint avers that appellants are the only heirs of Adams Earl, who died intestate in January, 1898. On the 14th day of September, 1883, Adams Earl owned in fee the south half of section four and all of section nine, in township twenty-five north, range eight west, in Benton county, and on that "day entered into a contract with the said defendant Watson F. Blair whereby, in consideration of the sum of $38,286.50, he sold to said Blair the following parts of said sections four and nine, to wit: Commencing in the center of the M. Fowler free gravel road at its intersection with the east line of said section nine; thence north on the east line of said sections nine and four 6,600 feet; thence west, or nearly west, 5,280 feet, to a point on the west line of said section four 6,600 feet north of the center of said M. Fowler free gravel road, at the point where said center of said gravel road crosses the west line of said section nine; thence south on the west line of said sections four and nine to the center of said M. Fowler free gravel road; thence east, or nearly east, on the center line of said M. Fowler free gravel road 5,280 feet, to the place of beginning," except a tract 66 by 132 feet theretofore conveyed to one Robins. That the real estate so sold is in the complaint referred to. "as said 800 acres of real estate lying north of the center of the M. Fowler free gravel road;" that on the 14th day of September, 1883, Adams Earl, his wife joining, executed and delivered to Blair a deed, afterwards duly recorded, "intending thereby to convey to said Blair the premises sold to him and described as aforesaid, but by the mutual mistake of said Earl and said Blair, the description of the premises contained in said deed was as follows, to wit: Section nine and the south half of the south half of section four, all in township twenty-five north, of range eight west,"—except the tract 66 by 132 feet theretofore conveyed to Robins.

On the 8th day of December, 1883, Blair entered into a contract with VanNatta whereby Blair, in consideration of $30,000, sold to VanNatta the 800 acres lying north of the center of the M. Fowler free gravel road, and on that day Blair, his wife joining, executed and delivered to VanNatta a deed, afterwards duly recorded, intending thereby to convey to VanNatta the 800 acres lying north of the road, but by the mutual mistake of Blair and Van-Natta the real estate was described in the deed the same as it was described in the deed from Earl to Blair; that upon the execution of the deed from Earl to Blair the latter took possession of the 800 acres lying north of the gravel road, and remained in such possession until he sold the same to VanNatta, who immediately after the execution of the deed to him by Blair, took possession of all of the 800 acres lying north of the gravel road, placed fences around the same, and has since remained in the undisturbed possession thereof, making valuable and lasting improvements thereon; has claimed and still claims to be the owner, and has been and is in fact the owner, in fee simple, of the same by virtue of such sales; that the mutual mistake of the parties in each of the deeds occurred as follows: At the times the deeds were executed it was believed by Earl, Blair, and VanNatta, and by the public generally that the south line of section nine was in the center of the M. Fowler free gravel road, and that this belief and mistake of the parties and of the public generally as to the location of the south line of section nine continued from the time of such sales of the 800 acres until some time in the year 1886, when a legal survey was had, when it was for the first time discovered by the parties and the public that the south line of section nine was not at the center of such gravel road, but a considerable distance south thereof, and that section nine south of the center of the road embraced certain land, which is particularly described, and which consists of 17.77 acres of land and fifty-six lots in the original plat of the

town of Fowler, all of the value of $7,000; that the land and lots in section nine south of the center of the road are and always have been in section nine, but were not embraced in the real estate sold by Earl to Blair, nor in that sold by Blair to VanNatta, but were, by the mutual mistake of the parties, embraced in the descriptions in the deeds; that such real estate south of the road was owned in fee by Earl at the time of the sale of the 800 acres lying north of the road to Blair, and continued to be owned by him to the time of his death, and since his death has continued to be owned and is still owned in fee by appellants as the only heirs of Earl, and since the death of Earl appellants have been and are lawfully entitled to the possession of such land; that the deed from Earl to Blair and the deed from Blair to VanNatta would have contained a correct description of the land sold and intended to be conveyed, had the line between section nine and section sixteen, immediately south, been at the center of the gravel road, as it was then believed by the parties and the general public to be; that the road also extended east across the south part of section ten, immediately east of section nine, and the center of the road was supposed by the parties to the deeds and the public generally to be the dividing line between sections ten and fifteen, immediately south, which supposition and belief continued until the survey; that on April 8, 1875, Earl and one Moses Fowler, owners as tenants in common of sections ten and fifteen, and also of the north half of section sixteen, laid out the town of Fowler by a duly acknowledged and recorded plat; that the town so platted was intended by them to be wholly upon section fifteen and the northeast quarter of section sixteen, but, on account of the mistake in supposing that the center of the gravel road was the line dividing sections nine and ten from sections fifteen and sixteen, the lots and streets as actually laid off embraced the strip of ground between the north line of section fifteen and the north line of the

northeast quarter of section sixteen and the center of the gravel road, which strip of ground, as was ascertained by the survey, was, as to that part north of section sixteen, in section nine, and, as to that part north of section fifteen, in section ten; that up to the time of making the deeds in controversy, Fowler and Earl had sold and conveyed by warranty deeds, duly recorded, several of the lots platted in section nine, south of the road, had placed the purchasers in possession, who had enclosed the same with fences, erected buildings thereon, and were in possession thereof,— facts known to Blair and VanNatta at the time the sales and deeds were made to them of the 800 acres; that in the year 1890 VanNatta took unlawful possession of the real estate in section nine, south of the center of the gravel road, being the 17.77 acres and all of the lots except those sold by Fowler and Earl, and since taking such possession he has remained and still remains in unlawful possession thereof, and unlawfully kept and still keeps appellants out of possession; that on April 10, 1895, for the purpose of correcting the mistakes in the deeds, Earl and wife signed and acknowledged a warranty deed to VanNatta for the 800 acres of land north of the gravel road, intended to be conveyed in the two former deeds, and intended to correct the mistakes therein, and duly tendered the same, and demanded of him that he accept the same for the purpose of correcting the description in such deeds, and to make Van-Natta's title to the real estate intended to be conveyed in such former deeds perfect of record, a copy of which is filed as an exhibit; that VanNatta refused and still refuses to accept such deed; that appellants are ready and willing to execute any deed for the 800 acres north of the gravel road, intended to be conveyed by the former deeds, that may be necessary to make VanNatta's title perfect; that appellants are ready and willing to do anything further in the premises, under the order of the court, that may be equitable; that certain other defendants, named, claim to have some

interest in the real estate south of the road, the nature of which claim is unknown, but which is without foundation and adverse to appellants' title. The complaint asks a reformation of the deeds, possession of the land in section nine, south of the road, and for damages. Copies of the deeds are filed with the complaint.

It is argued that the mistake averred is not a mistake of fact, but a mistake of law, against which equity will afford no relief. The rule that in the reformation of an instrument it must be shown that words were inserted that were intended to be left out, or that words were omitted which were intended to be inserted, is not of universal application in actions to reform written instruments. In the case at bar, nothing was mistakenly omitted or inserted in the description of the land; there was no mistake in the phraseology used; but the description written in the deeds is just as the parties, at the time the deeds were executed, intended it to be. The description in the deeds was complete. It carried the land described. No mistake was made as to the legal effect of the language used. The parties wrote into the deeds the description they intended to write. The mistake consisted in supposing that the description used in the deeds applied to the land intended to be conveyed. The subject-matter of the contract between the parties was 800 acres of land in sections nine and four, the southern boundary line of which was the center line of the gravel road, and they understood the language used in the deeds. But the mistake occurred through their ignorance of the location of the south boundary line of section nine, and in supposing that that line was at the center line of the highway, when in fact it was about twenty rods south of that line. They believed that the description of the land as section nine and the south half of the south half of section four described 800 acres of land in sections nine and four, the southern boundary line of which was the center line of the highway. In this they were mistaken.

They agreed upon certain words as descriptive of the land, but the subject-matter of the contract between the parties was land which these words did not correctly describe. "It is an error to suppose," said the court in *Callon* v. *Lewis,* 119 Ind. 181, "that a written instrument can only be corrected where the mistake results from the omission or insertion of words different from those agreed upon, or contrary to the expressed intention of the parties. It is a mistake of fact when, through ignorance, inadvertence, negligence or otherwise, the description in a deed does not in fact embrace the land which the parties intended it should, and which they supposed it did. The inquiry in such a case must be, what was the subject of the contract, not what words were agreed upon as descriptive of the land." Tested by this rule the facts averred in the case at bar show the mistake to have been a mistake of fact, and not a mistake of law. *Baker* v. *Pyatt,* 108 Ind. 61; *Keister* v. *Myers,* 115 Ind. 312; *Bush* v. *Hicks,* 60 N. Y. 298; 2 Pomeroy's Eq. (2d ed.), §§852, 853, 854.

The object sought in the reformation of a deed is not to make a new agreement, but to establish and perpetuate the agreement of the parties at the time the deed was written and the mistake made. *Roszell* v. *Roszell,* 109 Ind. 354; *Welshbillig* v. *Dienhart,* 65 Ind. 94. A grantor, as well as a grantee, may have a mistake in a deed corrected. *Lucas* v. *Labertue,* 88 Ind. 277; *Andrews* v. *Andrews,* 12 Ind. 348. And in all cases of mistake in written instruments, equity will interfere as between the original parties, or those claiming under them in privity, such as personal representatives, heirs, devisees, legatees, assignees, voluntary grantees, or judgment creditors, or purchasers from them with notice of the facts. *White* v. *Wilson,* 6 Blackf. 448, 39 Am. Dec. 437; *Sample* v. *Rowe,* 24 Ind. 208; *Morris* v. *Stern,* 80 Ind. 227; *East* v. *Peden,* 108 Ind. 92. In 3 Pomeroy's Eq. (2d ed.), §1376, the author says: "Equity has jurisdiction to reform written instruments in

but two well-defined cases: (1) Where there is a mutual mistake, that is, where there has been a meeting of minds, an agreement actually entered into, but the contract, deed, settlement, or other instrument, in its written form, does not express what was really intended by the parties thereto. And (2) where there has been a mistake of one party accompanied by fraud or other inequitable conduct of the remaining parties. In such cases the instrument may be made to conform to the agreement or transaction entered into according to the intention of the parties." Tiedeman's Eq. Jur., §507; *Citizens, etc., Bank* v. *Judy,* 146 Ind. 322.

It is argued that the antecedent contract is not pleaded with sufficient certainty. It is quite true that a court of equity will grant the high remedy of reformation only upon a certainty of the error. The presumption is that the written contract embodies the agreement in which the minds of the parties met. But in pleading the antecedent contract it is only necessary to plead its terms positively and with certainty, so that nothing will be left to inference. A rule requiring that the exact words employed by each party to the contract should be specially pleaded would violate the rule against pleading evidence. It is unnecessary to repeat the averments of the complaint as to the antecedent contract. They are positive and certain, and are within the rule that "in an action to reform a written instrument the plaintiff must set forth the terms of the original agreement, and also the agreement as reduced to writing, and point out with clearness wherein there was a mistake." *Citizens, etc., Bank* v. *Judy,* 146 Ind. 322, and cases cited.

It is also argued at some length that the reformation of the deeds is the principal issue presented by the pleading; that there are two elements required to constitute the cause of action, and if either be absent the pleading is bad. The theory of the pleading is to reform certain deeds and recover possession of real estate. It states a single cause of

action. A written instrument may be reformed and enforced in the same action. *Hunter* v. *McCoy,* 14 Ind. 528; *Conger* v. *Parker,* 29 Ind. 380; *Rigsbee* v. *Trees,* 21 Ind. 227; *Monroe* v. *Shelton,* 36 Ind. 302; *Miller* v. *Kolb,* 47 Ind. 220; *Smith* v. *Kyler,* 74 Ind. 575; *Walls* v. *State, ex rel.,* 140 Ind. 16; §280 Burns 1901. It is well settled that in an action of this kind the asking for the reformation of the deeds and the possession of the land constitute but one cause of action. And it is quite clear that in a case like that at bar there can be no recovery of the possession without a reformation of the deeds. As long as the deeds stand as executed, appellants can not assert that an estate in fee did not pass. If the complaint is sufficient to entitle appellants to recover possession of the land, it must aver facts sufficient to entitle them to a reformation of the deeds.

In *Popijoy* v. *Miller,* 133 Ind. 19, appellees had, by mistake, conveyed away certain land. They sued to reform the deed and for possession. The trial court held that they were not entitled to a reformation of the deed, but were entitled to possession. On appeal it was held that having conveyed away the legal title they could not recover on their equitable title, except they reform the conveyance by which the legal title passed; and, as they were not entitled to a reformation of the deed, a new trial was ordered.

In *Smith* v. *Kyler,* 74 Ind. 575, appellees, as heirs of one Hazeltine, sued appellants, as heirs of one Lee, to reform a deed and for possession. The deed from Lee to Hazeltine contained an incorrect description of part of the land. It was held in that case that if the "gist of the action" had been the correction of the alleged mistake in the deed, the complaint would have been bad against a demurrer; but as the averments showed that "the gravamen of this action was the recovery of the possession of the real estate, and the determination and quieting of appellees' title thereto; and as an incident to this cause of action, 'essen-

tial to a complete remedy,' they sought to have the alleged mistake in one of their title papers corrected in the same suit. This the appellees had the right to do, under the statutory provisions last quoted; and as the complaint stated facts sufficient to constitute a cause of action in their behalf, for the recovery of the real estate, and for the quieting of their title thereto, it is certain that the court committed no error in overruling the demurrer to their complaint, even though its allegations in regard to the alleged mistake in the deed were clearly defective and insufficient. The appellants' objection to the complaint now under consideration could only have been reached and made available, as it seems to us, either by a motion to strike out or reject the allegations in regard to the alleged mistake in the deed, on the ground of their insufficiency, or by a motion to make such allegations more certain and specific."

Whether there is a seeming conflict in the holdings of the two cases last cited, we think it unnecessary to inquire. The determination as to which, if either, of the two issues tendered controls the case is not necessary to a solution of the questions presented by the demurrer. See *Wilson* v. *Brookshire,* 126 Ind. 497, 9 L. R. A. 792; *Bradford* v. *School Town of Marion,* 107 Ind. 280; *Butler University* v. *Conard,* 94 Ind. 353.

The facts averred in the complaint, and admitted by the demurrer, show that there was a mutual mistake of the parties; that an agreement was actually entered into, but that the deeds did not express what was really intended by the parties; that this mutual mistake of the parties in the description of the land sold and intended to be conveyed grew out of the erroneous belief of the parties as to the true location of the south boundary line of section nine. This was a mistake of fact, and the averments of the complaint are sufficient to entitle appellants to a reformation of the deeds; and, with a reformation of the deeds, sufficient facts are averred to entitle appellants to possession of the land. As

we consider the complaint sufficient both for reformation of
the deeds and for possession, and as the statute permits
these two issues to be tendered in the same action, there is
no necessity, upon demurrer, to inquire whether the one
issue or the other will control the case, except in so far as
delay in bringing the action is concerned.

Was there unreasonable delay? As a suit for the pos-
session of land the complaint does not show that the action
is barred by the statute of limitations. As a suit for the
reformation of deeds,—a case of equitable cognizance,—
a more difficult question as to *laches* is presented. "The
statute of limitations," said the court in *Koons* v. *Blanton,*
129 Ind. 383, "prescribes definite periods within which
certain actions must be brought or they will thereafter be
barred, but the limits of excusable and of inexcusable delay,
as affecting the rights to relief from a court of equity, can
only be defined by general rules, admitting of many excep-
tions." In determining the question of *laches* the distinc-
tion between an action to rescind a contract and one to re-
form a contract must be kept in view. In the one case the
party seeks to set aside the contract, and to be placed where
he would be had no contract ever been made; and in the
other he affirms the contract as actually made and seeks to
reform the instrument through which an attempt was made
to evidence the contract. The rule of diligence applying to
an action for rescission and the rule applying to an action
to reform, are materially different, and that which would
be fatal *laches* in one case would not bar a recovery in the
other. *Koons* v. *Blanton,* 129 Ind. 383.

It does not appear from the facts averred that equal or
superior rights of third parties have intervened because of
delay in bringing the action. *Morrison* v. *Collier,* 79 Ind.
417. Nor is it disclosed that the delay has worked any dis-
advantage to VanNatta. The deeds were executed in Sep-
tember and December, 1883; VanNatta immediately took
possession of all the land sold and intended to be conveyed,

—the 800 acres lying north of the road,—placed fences around the same and made valuable and lasting improvements, and has since remained in possession and still claims to be the owner thereof. The mistake was discovered in 1886, and in 1890 he took possession of the land south of the road. As the complaint does not show that he has in fact been harmed by the delay, if, in fact, the delay has been to his injury, that would be matter of defense. The pleading shows no more than mere delay and apparent acquiescence. "The resistance to relief," said the court in *Koons* v. *Blanton,* 129 Ind. 383, "which would otherwise be just is founded upon mere delay and apparent acquiescence. The validity of the offense must be tried upon principles substantially equitable. Consider the length of the delay and the acts done in the interval, and where would the balance tend of justice or of injustice in taking the one course or the other? Wherein will there be injustice or inequity done to appellants in now making the correction?" This language is applicable to the case at bar.

In *Citizens, etc., Bank* v. *Judy,* 146 Ind. 322, the court said: " 'Where it would be practically unjust to give a remedy, either because the party has, by his conduct, done that which might fairly be regarded as equivalent to a waiver of it, or where by his conduct and neglect he has, though perhaps not waiving that remedy, yet put the other party in a situation in which it would not be reasonable to place him if the remedy were afterwards to be asserted, in either of these cases, lapse of time and delay are most material. But in every case, if an argument against relief, which would otherwise be just, is founded upon mere delay, that delay of course not amounting to a bar by any statute of limitations, the validity of that defense must be tried upon principles substantially equitable. Two circumstances, always important in such cases, are, the length of the delay and the nature of the acts done during the in-

terval, which might affect either party and cause a balance of justice or injustice in taking one course or the other.' It is evident, therefore, that what would be fatal *laches* in one case would not bar a recovery in another. In this case, the rights of no innocent third parties have intervened."

In *Lucas* v. *Labertue,* 88 Ind. 277, the plaintiff, appellee, had executed a deed, •which, through a mistake in the description, conveyed more land than was intended to be conveyed. He sued to quiet title and to reform the deed. The opinion speaks of the case as a suit to quiet title. An objection urged against the complaint was that appellee had lost his right of action by negligence and inexcusable delay, the deed having been made in 1864, and the suit commenced in 1880, after the death of the original purchaser. "This objection," said the court, "is not good on demurrer. Unless it affirmatively appears that the case does not come within any of the exceptions to the statute of limitations, a demurrer to the complaint can not be sustained on the ground that the complaint shows a case barred by the statute. *Kent* v. *Parks,* 67 Ind. 53. As to the claim to quiet title this objection is not applicable." See, also, *Roszell* v. *Roszell,* 109 Ind. 354; *Figart* v. *Halderman,* 75 Ind. 564; *Swatts* v. *Bowen,* 141 Ind. 322; *Dunn* v. *Tousey,* 80 Ind. 288; *Johnson* v. *Atlantic, etc., Co.,* 156 U. S. 618, 15 Sup. Ct. 520, 39 L. Ed. 556; *Murphy* v. *Blair,* 12 Ind. 184.

As the rights of third parties have not intervened because of the delay, and as appellee has suffered no injury nor been induced to incur any expense or enter into any engagements of a burdensome character because of the delay, and as it does not appear that any injustice or inequity will be done appellee if the mistake is now corrected, it can not be said that the pleading shows that appellants have been guilty of such *laches* as precludes them from obtaining relief. And if, as seems to be indicated in some of the cases above cited, the statute of limitations is applicable,

Earl *v.* VanNatta.

upon the facts averred it would be necessary to plead the statute as a defense.

It is also insisted that the complaint is bad for failing to show a demand for the correction of the mistake in the deeds before bringing suit. The complaint seeks a reformation of the deeds and possession of the land. The pleading avers that appellee unlawfully took and remains in possession, and unlawfully keeps appellants out of the possession to which they are entitled. If the only relief sought was the reformation of the deeds, a demand for correction is essential. "The rule is," said the court in *Citizens, etc., Bank* v. *Judy,* 146 Ind. 322, "that when the only relief sought is the reformation of deed or other contract, a previous demand is essential, but where, in addition to the reformation, a recovery is demanded, no prior demand is necessary." Citing *Walls* v. *State,* 140 Ind. 16; *Sparta School Tp.* v. *Mendell,* 138 Ind. 188; *Axtel* v. *Chase,* 83 Ind. 546; *Lucas* v. *Labertue,* 88 Ind. 277; Thornton's Annot. Pr. Code, §279. In *Lucas* v. *Labertue, supra,* a suit to reform a deed and quiet title, the court said: "The third objection is that the complaint fails to show that the defendant was requested to correct the mistake before suit brought; but no such demand is necessary where the action is to quiet title." While the authorities upon the question of demand do not seem to be entirely in harmony, yet, the reasoning of the later adjudications sustains the rule that in a case like this, where the relief asked is reformation and recovery of possession, no previous demand is necessary.

The demurrer to the complaint should have been overruled. Judgment reversed.