**Roger S. WRIGHT, Appellant–
Petitioner**

v.

**Rebecca S. SAMPSON, Appellee–
Respondent.**

No. 52A02–0410–CV–868.

Court of Appeals of Indiana.

July 19, 2005.

Thomas J. Hilligoss, Russell, McIntyre, Hilligoss & Welke, Kokomo, for Appellant.

Donald G. Fern, Fern, Grund & Grund, P.C., Peru, for Appellee.

## OPINION

ROBB, Judge.

Roger Wright appeals the trial court's judgment in favor of Rebecca Sampson, which quieted title to certain property in Sampson's name and denied Wright's counterclaim for reformation of certain deeds. We reverse and remand.

### Issues

Wright raises four issues for our review, which we consolidate, reorder, and restate as follows:

1. Whether a grantee, who is in privity with the grantor, may bring a claim for reformation of one of the grantor's earlier deeds to a different grantee;

2. Whether a deed that was given as a gift to a grantee may be reformed because of a unilateral mistake on the grantor's part; and

3. Whether the trial court erred in refusing to allow certain witnesses to testify.

### Facts and Procedural History

Ray Wright ("Ray") is the father of Wright and Sampson. At issue here is a parcel of property consisting of roughly twenty-five acres owned by Ray that is located in Miami County, Indiana. On the eastern portion of this property is a junkyard business that is operated by Ray and Wright. Sampson's home is located on property directly west of the twenty-five acre parcel owned by Ray. At some point, Ray decided to divide the twenty-five acre parcel between Wright and Sampson, with each getting roughly one-half of the property. Ray intended that Wright should be given the eastern half of the property where the junkyard was located, while Sampson would receive the western half of the property. Ray hired attorney Thomas Keith to prepare the necessary deeds for Wright and Sampson.

On May 30, 1997, Ray executed a deed, prepared by Keith, to Sampson, and Sampson recorded the deed that day. The deed was given to Sampson as a gift, and she gave no consideration for it. Keith later learned that this deed contained an incorrect property description, and informed Ray that the deed had, in fact, conveyed the entire twenty-five acre parcel to Sampson.

On September 22, 1997, Ray, who was still unaware of the error in Sampson's deed, executed a deed to Wright, who recorded the deed that same day. Like Sampson's deed, Wright's deed was given to him as a gift, and he gave no consideration for it. Keith later determined that Wright's deed contained an incorrect property description in that it conveyed to Wright the western half of the twenty-five acre parcel rather than the eastern half. Additionally, the property conveyed to Wright had already been given to Sampson in her deed.

Ray contacted Wright and informed him of the errors in his and Sampson's deeds. Ray provided Wright with certain documents prepared by Keith that were designed to correct the mistakes in his and Sampson's deeds, and requested that Wright take these documents to Sampson so that she could sign them. When Wright delivered the documents to Sampson, she refused to sign them. Following this, Ray continued to operate the junkyard on the twenty-five acre parcel. Disputes eventually arose between Wright and Sampson regarding access to the property, and on July 3, 2001, Sampson filed a complaint asking that title to the

entire twenty-five acre parcel be quieted in her name.

Wright filed a timely answer to Sampson's complaint along with a counterclaim against Sampson. Wright's counterclaim requested that the trial court reform both his and Sampson's deeds to reflect Ray's true intentions. On September 15, 2003, Wright filed a motion to join Ray as a defendant, which the trial court denied on January 6, 2004. A bench trial was held on August 9, 2004. During the trial, Wright sought to have both Ray and Keith testify. Sampson's counsel objected arguing that Ray and Keith should not be allowed to testify because it was contrary to the statute of frauds and the parol evidence rule. The trial court sustained Sampson's objection, and Wright's counsel made an offer to prove what both Ray and Keith's testimony would have been. On September 13, 2004, the trial court issued an order in which it made the following pertinent findings of fact and conclusions of law:

 5. [Sampson] is before the court seeking to quiet the title of the property deeded to her in May 1997. [Wright] has requested that the court reform the deed given to [Sampson] by their father [Ray], and states it was not his father's intention to give [Sampson] the entire property.

 6. [Wright] has submitted no evidence that his title is superior to the title to the real estate held by [Sampson]. In addition, no evidence was presented that either a mutual mistake was made at the time [Ray] deeded the property to [Sampson], or that

 [Sampson] induced the transfer to her by fraud.

 7. For a party to succeed in a reformation action, evidence must be presented that either demonstrates a mutual mistake or fraud by clear and convincing evidence. *Meyer v. Marine Builders, Inc.*, 797 N.E.2d 760, 771 (Ind.App.2003).

Appellant's Appendix at 6–7.[1] The trial court concluded that (1) Sampson's deed took priority over Wright's deed; (2) Wright's counterclaim for reformation of the deeds was without right and unfounded; and (3) title to the twenty-five acre parcel should be quieted in Sampson's name. Wright now appeals.

*Discussion and Decision*

Wright argues that the trial court's judgment was erroneous and should be reversed. We agree.

### I. Standard of Review

In its September 13, 2004, order, the trial court entered findings of fact and conclusions of law. When a trial court enters findings of fact and conclusions of law, we must first determine whether the evidence supports the findings and then whether the findings support the judgment. *Lake County Trust Co. v. Jones*, 821 N.E.2d 1, 3 (Ind.Ct.App.2004). We will only set aside a trial court's findings of fact and conclusions of law if they are clearly erroneous. *Id.* Findings and conclusions are clearly erroneous when the record contains no facts or inferences supporting them. *Id.* "A judgment is clearly erroneous when a review of the record leaves us with the firm conviction that a mistake has been made." *Id.* When a trial court's judgment contains findings of fact

---

1. We note that Wright did not include a copy of the trial court's September 13, 2004, order in his brief. Pursuant to Indiana Appellate rule 46(A)(10), an appellant's brief "shall in-

clude any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal."

and conclusions of law, we will neither reweigh the evidence nor assess the credibility of witnesses, and we will only consider the evidence most favorable to the judgment. *Id.*

## II. Grantee Can Bring a Claim for Reformation

■■■ Sampson argues that the trial court properly denied Wright's request to reform his and Sampson's deeds because Wright was not entitled to make such a request. She notes that in *East v. Pedin*, 108 Ind. 92, 97, 8 N.E. 722, 724 (1886), our supreme court stated, "In all cases of mistake in written instruments, courts of equity will interpose their aid between original parties, or those claiming under them in privity, but on behalf of persons not thus connected, courts of chancery do not lend their aid." Sampson contends that because Wright is not in privity with her or Ray, he is not entitled to seek reformation of the deeds.[2] She also asserts that the proper party to bring a claim for reformation of the deeds was Ray.

However, we conclude that Wright is entitled to bring a claim for reformation of the deeds because he is in privity with Ray. The above statement of the law made by our supreme court in *East* is still valid today. This is evidenced by our recent statement that "[t]he general rule is that one must be a party to or in privity with a party to the deed to be entitled to reform a deed." *Payton v. Hadley*, 819 N.E.2d 432, 440 n. 7 (Ind.Ct.App.2004) (citing 66 Am. Jur.2d Reformation of Instruments § 58 (2001)). We noted that " '[p]rivity is defined as the mutual or successive relationship to the same rights of property, title, or estate." ' *Id.* (quoting 66 Am.Jur.2d Reformation of Instruments § 59 (2001)). We specifically pointed out that " '[a] grantee of property succeeds to the grantor's right to maintain a suit to reform a prior deed." ' *Id.* (quoting 66 Am.Jur.2d Reformation of Instruments § 59 (2001)). We have also explained that a party that is in privity with a party to the deed would include "personal representatives, heirs, devisees, legatees, assignees, voluntary grantees, or judgment creditors, or purchasers from them with notice of the facts." *Earl v. Van Natta*, 29 Ind.App. 532, 64 N.E. 901, 904 (1902).

Here, Wright can bring a claim requesting the reformation of the deed given to him by Ray because he was a party to the deed. Wright can also bring a claim requesting the reformation of the deed Ray gave to Sampson because Wright is in

---

**2.** Sampson also contends that Wright is not entitled to bring a claim for reformation of the deeds because he does not have standing and is not a real party in interest. We disagree. Standing "refers to the question of whether a party has an actual demonstrable injury for purposes of a lawsuit." *Union Township School Corp. v. State ex. rel. Joyce*, 706 N.E.2d 183, 187 (Ind.Ct.App.1998), *trans. denied.* "A plaintiff has standing if: (1) he can demonstrate a personal stake in the outcome of the lawsuit, and (2) he can show that he has sustained or was in immediate danger of sustaining some direct injury as a result of the conduct at issue." *Id.* Here, Wright has a personal stake in the outcome of the lawsuit because he is entitled to a portion of the twenty-five acre parcel. Wright will also sustain a direct injury if the deeds are not reformed and title is quieted in Sampson's name because he will have lost his interest in the property. Therefore, Wright does have standing to seek reformation of the deeds.

With regard to whether Wright is a real party in interest, we have previously stated that a real party in interest is the person who is the true owner of the right sought to be enforced, and is the person who is entitled to the fruits of the action. *Id.* The purpose of Wright's counterclaim is to reform the deeds such that both he and Sampson receive a share of the twenty-five acre parcel. If Wright is successful in his counterclaim, then he will be entitled to the fruits of the action in that he will receive a share of the property. Therefore, Wright is a real party in interest.

privity with a party to that deed, namely Ray. Wright is in privity with Ray because he is a voluntary grantee, and because he has a successive relationship to Ray's property rights to a portion of the twenty-five acre parcel. Therefore, Wright is entitled to bring a claim for the reformation of both his and Sampson's deeds.

### III. Reformation of Deed Based on Unilateral Mistake

■ The trial court concluded that Wright's claim for reformation of the deeds must fail because he did not introduce any evidence demonstrating a mutual mistake or fraud. Wright contends that this conclusion was erroneous. He asserts that a trial court can reform a deed that has been given to a grantee as a gift if it is shown that the grantor made a unilateral mistake in executing the deed.

■ The trial court is correct that generally "to succeed in a reformation action a party must show either mutual mistake or fraud by clear and convincing evidence." *Meyer v. Marine Builders, Inc.,* 797 N.E.2d 760, 771 (Ind.Ct.App.2003); *see also Estate of Reasor v. Putnam County,* 635 N.E.2d 153, 160 (Ind.1994). However, both *Meyer* and *Estate of Reasor* involved contracts, in that the grantor deeded property to the grantee in exchange for some type of compensation. Here, though, Ray gave Sampson and Wright their deeds as gifts. In reformation cases, courts in other states have drawn a distinction between deeds that are given in exchange for some type of compensation, and thus are contractual in nature, and those that are given as gifts. The Kentucky Court of Appeals has noted that, as a basis for reformation of a deed, mutuality of mistake "need only be established when there is a mutuality of obligation, as in a contractual relationship." *Twyford v. Huffaker,* 324 S.W.2d 403, 406 (Ky.App.1958). The court went on to state that "where property is con-

veyed as a gift, the transaction is by its very nature unilateral, and the grantee's intent or conduct (other than acceptance) plays no part in fixing the rights of the parties." *Id.* Stated perhaps more succinctly, "a gift is unilateral in its nature and, consequently, only a unilateral mistake can occur." *Schulz v. Miller,* 837 P.2d 71, 76 (Wyo.1992). The distinction then between a deed given in exchange for some form of compensation and a deed given as a gift lies in the obligations incurred by the grantor and grantee. When a deed is exchanged in a contractual relationship, both the grantor and grantee are obligated to perform in some type of fashion, which creates the opportunity for a mutual mistake to occur. Whereas, when a deed is given as a gift, the grantor is the only party with an obligation, and, thus, only a unilateral mistake is likely to occur.

Based on this distinction, several courts have concluded that a deed may be reformed for a unilateral mistake made by the grantor where the property is conveyed as a gift. *See Yano v. Yano,* 144 Ariz. 382, 697 P.2d 1132, 1135 (1985) (holding that reformation of a deed may be granted on the application of the grantor of a voluntary conveyance on the basis of a unilateral mistake); *Davidson v. Lane,* 566 S.W.2d 891, 892 (Tenn.Ct.App.1978) (holding that a court of equity will reform a voluntary conveyance made without consideration, to reflect the intention of the grantor); *Westcott v. Westcott,* 259 N.W.2d 545, 548 (Iowa Ct.App.1977) (holding that voluntary conveyances are unilateral and that a trial court has the power to reform a deed to express the intentions of the grantor even though there has been no mutual mistake); *Nelson v. Harris,* 32 N.C.App. 375, 232 S.E.2d 298, 300 (1977) (holding that the grantor of a conveyance for which no consideration was given by the grantee is entitled to reformation when

the deed fails to express the actual intent of the parties due to the grantor's unilateral mistake); *Twyford*, 324 S.W.2d at 406.

■ Wright argues that our supreme court adopted the same position in *Andrews v. Andrews*, 12 Ind. 348 (1859). In that case, the grantor, Andrews, gave certain property to his mother, the grantee, as a gift. The deed gave title to the mother in fee simple. Andrews alleged that this was a mistake and that the mother should only have received a life estate in the property. Andrews filed suit for reformation of the deed, but the trial court dismissed his complaint. Our supreme court reversed the trial court's decision. *Id.* at 349. The court stated, "It is a general proposition of law, that a deed drawn by mistake, for a different interest than that intended to be conveyed, may be corrected, if the mistake be clearly proved. We do not see why a deed of gift should form an exception." *Id.* at 348–49 (citation omitted). The federal district court for the Southern District of Indiana recently considered the *Andrews* opinion and concluded that "[a]t most, *Andrews* stands for the proposition that a unilateral mistake is a sufficient ground for reformation of a voluntary conveyance of property if the mistake can be clearly proved." *Seufert v. Mulzer*, 2000 WL 1358527, *5 (S.D.Ind. 2000). We agree with this conclusion and therefore hold that a deed given as a gift can be reformed if the party seeking reformation of the deed proves by clear and convincing evidence that a unilateral mistake was made in the execution of the deed.

However, our supreme court has also long held that although a voluntary deed, such as a deed given as a gift, will be corrected of mistakes upon the application of the grantor against the grantee, such mistakes in a voluntary deed will not be corrected upon the application of the grantee against the grantor. *Randall v. Ghent*, 19 Ind. 271, 272 (1862). The purpose for such a rule is well explained by the Supreme Court of Montana in *Laundreville v. Mero*, 86 Mont. 43, 281 P. 749 (1929). There, that court stated that "[t]he reason for the rule is that when one accepts the bounty of another he may not be heard to say, as against the donor, that something else should have been given. The grantor, not having received any consideration for the conveyance, is accorded the privilege of changing his mind and may not be compelled to make a gift previously intended and of which he has since repented, when no rights of others have intervened." *Id.* at 750 (citation omitted). Here, though, Wright is not seeking reformation of the deeds as against Ray, the grantor, but against his fellow grantee, Sampson. Therefore, the rule announced by our supreme court in *Randall* does not bar Wright from seeking reformation of the deeds.

The question, though, remains whether it is permissible for a grantee to bring suit against his fellow grantee for reformation of their deeds. In *Simms v. Simms*, 139 Misc. 726, 249 N.Y.S. 171 (N.Y.Sup.1931), the New York Supreme Court faced a situation similar to the one here in that a grantee had brought suit against a fellow grantee for reformation of their respective deeds. In that case, the grantor owned two pieces of adjoining property known as lot No. 132 and lot No. 133. The grantor built his home on lot No. 133 believing it was lot No. 132. The grantor then executed two deeds. The first deed gave title to lot No. 132 to the grantor's wife, while the second deed gave the grantor's son title to lot No. 133. Both of these deeds were given as gifts. After the grantor's death, the son asserted that, pursuant to his deed, he was entitled to possession of lot No. 133 and the house located thereon.

The wife brought suit seeking reformation of her and the son's deeds.

The New York Supreme Court first concluded that the wife had established that it was the grantor's intent to give the wife title to lot No. 133 and the son title to lot No. 132. *Id.* at 173. The court then stated that the general rule is that "equity will not reform a voluntary conveyance in a suit brought by the grantee against the grantor." *Id.* The court determined that this rule did not apply though because the controversy was between two grantees. *Id.* at 174. The court concluded that

> Under [these] circumstances, equity not only has the right, it is under a duty, to correct the mistake which has been made. Neither principle nor precedent stands in the way of affording the relief necessary to give effect to the true intent of the parties, and thus to accomplish a just result. This is indeed a case where 'the plastic remedies of the chancery are moulded to the needs of justice.' *Foreman v. Foreman,* 251 N.Y. 237, 242, 167 N.E. 428, 429. The two deeds will accordingly be reformed.

*Id.*

We agree with the *Simms* analysis and conclude that it is permissible for a grantee to bring suit against a fellow grantee for the reformation of their respective deeds. Therefore, Wright's suit against his fellow grantee Sampson is not barred.

Here, the trial court concluded that Wright's counterclaim for reformation of his and Sampson's deeds must fail because he failed to present any evidence of mutual mistake or fraud. This conclusion was erroneous because a trial court can reform a deed upon the application of a grantee if the grantee proves by clear and convincing evidence that a unilateral mistake has been made. Therefore, the trial court's judgment with regard to Wright's counterclaim must be reversed.

## IV. Exclusion of Witnesses from Testifying

■ At trial, Wright attempted to have Ray and attorney Thomas Keith testify. Sampson argued that they should not be allowed to testify because the statute of frauds and the parol evidence rule barred their testimony. The trial court sustained Sampson's objection, and Wright made an offer to prove what Ray and Keith's testimony would have been. Wright now argues that the trial court's decision to not allow Ray and Keith to testify was erroneous.

We first consider whether Ray and Keith were barred from testifying because of the statute of frauds. Indiana's statute of frauds states in relevant part:

(b) A person may not bring any of the following actions unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent:

 (1) An action charging an executor or administrator, upon any special promise, to answer damages out of the executor's or administrator's own estate.

 (2) An action charging any person, upon any special promise, to answer for the debt, default, or miscarriage of another.

 (3) An action charging any person upon any agreement or promise made in consideration of marriage.

 (4) An action involving any contract for the sale of land.

 (5) An action involving any agreement that is not to be performed within one (1) year from the making of the agreement.

(6) An action involving an agreement, promise, contract, or warranty of cure concerning medical care or treatment. However, this subdivision does not affect the right to sue for malpractice or negligence.

Ind.Code § 32–21–1–1.

 The purpose of the statute of frauds is to bar certain actions on promises, contracts, or agreements that are not placed in writing. The statute of frauds does not bar witnesses from testifying, and, thus, should not have barred Ray and Keith from testifying here.

The trial court also concluded that Ray and Keith were barred from testifying because of the parol evidence rule. We have previously stated that "[i]n general, where the parties to an agreement have reduced the agreement to a written document and have included an integration clause that the written document embodies the complete agreement between the parties … the parol evidence rule prohibits courts from considering parol or extrinsic evidence for the purpose of varying or adding to the terms of the written contract." *Krieg v. Hieber*, 802 N.E.2d 938, 943 (Ind. Ct.App.2004). Here, the parol evidence rule would have barred Ray and Keith from testifying if the deeds at issue were considered contracts. However, Wright and Sampson's deeds were not contracts because they were given as gifts. Because there are no contracts at issue here, the parol evidence rule does not apply and does not bar Ray and Keith from testifying.

Therefore, the trial court's conclusion that Ray and Keith were barred from testifying because of the statute of frauds and the parol evidence rule was erroneous and requires reversal of the trial court's judgment with regard to Wright's counterclaim.

*Conclusion*

Wright is entitled to bring a claim for reformation of his and Sampson's deeds because he is in privity with Ray. A trial court can reform a deed that has been given as a gift if the party seeking reformation proves by clear and convincing evidence that a unilateral mistake was made in the execution of the deed. We also hold that the trial court erred in barring Ray and Keith from testifying because the statute of frauds and the parol evidence rule do not bar their testimony. The trial court's judgment on Wright's counterclaim is therefore reversed, and we remand the case back to the trial court for a new trial solely on Wright's counterclaim. If Wright is able to prove by clear and convincing evidence that a unilateral mistake was made by Ray in executing the deeds given to Wright and Sampson, then the trial court should reform the deeds to reflect Ray's true intentions.

Reversed and remanded.

FRIEDLANDER, J., and BAILEY, J., concur.