


FILED

Nov 19 2025, 9:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Janette Sue Jackson, Jody Ann Stanley,
and Jeffrey Lynn Jackson,

*Appellants*

v.

Jay Thomas Jackson,

*Appellee*

---

November 19, 2025

Court of Appeals Case No.
25A-CT-1575

Appeal from the Clark Superior Court

The Honorable Kyle P. Williams, Judge

Trial Court Cause No.
10D06-2201-CT-17

---

**Opinion by Judge Brown**
Judges Felix and Scheele concur.

**Brown, Judge.**

[1] Janette Sue Jackson, Jody Ann Stanley, and Jeffrey Lynn Jackson (collectively, "Siblings") appeal the trial court's order entering summary judgment in favor of Jay Thomas Jackson ("Jay"). We reverse and remand with instructions.

## Facts and Procedural History

[2] Delores Taylor ("Mother"), the mother of Jay and Siblings, owned certain real property in Woodburn, Indiana (the "Woodburn Farm"). Mother "informed [Jeffrey] that she did not want Jay to receive any interest in the Woodburn Farm." Appellants' Appendix Volume III at 39. On August 3, 2012, Mother signed a warranty deed (the "First Deed") which identified her as the grantor and listed herself, Siblings, and Jay as grantees. The First Deed was recorded with the Allen County Recorder (the "Recorder") on August 24, 2012. The First Deed included a legal description which contained certain errors. Specifically, according to land surveyor Todd Jordan, the legal description "included an error wherein it was missing bearing and distance calls in the metes and bounds description, together with inaccurate references to quarter section corners" and "did not describe a parcel of land that [he] could accurately re-trace or survey."[1] Appellants' Appendix Volume II at 118-119.

---

[1] Siblings state the legal description "was internally inconsistent and did not close a boundary." Appellants' Brief at 9. Exhibit 1, which was attached to Jordan's affidavit, contains a survey stating, "Missing bearing and distance calls in the metes and bounds description, together with inaccurate references to quarter section corners result in 'bold' lines depicted hereon as the only boundary lines that can be accurately re-traced," and the depiction shows, in "bold," some but not all of the boundaries of the Woodburn Farm. *Id.* at 121.

[3]     Meanwhile, on August 21, 2012, Mother executed her Last Will and Testament (the "Will") providing:

> Section 5.2.  Woodburn Farm.  I leave any interest which I may own in the family farm located at . . . Woodburn, Indiana to my children, Jeff, Janette and Jody in shares of equal value.  I specifically make no provision for Jay Tomas [sic] Jackson to inherit any interest in the Woodburn Farm.

*Id*. at 126.

[4]     On August 28, 2012, the Allen County Auditor (the "Auditor") sent a letter to Mother's counsel stating:

> Our records show that we are currently holding documents that were prepared regarding the transfer of the above mentioned property for the following reason(s):
>
> * * * * *
>
> Incorrect legal description.  The legal description on the enclosed deed contains several errors.[2]  I've enclosed a copy of a previous corrective deed for your convenience.  Please review and submit a corrective deed so we may finish processing your request.
>
> * * * * *
>
> In order for these documents to be processed for the year 2012 payable 2013, corrective documents must be filed in our office within

---

[2] The copy of the First Deed attached to the letter included a date of "8-24-12" and the notations "Bad Legal" and "Working Copy" and included circles around a number of portions of the legal description with comments including "wrong footage & missing a course."  Appellants' Appendix Volume II at 132-133.

15 days after receipt of this letter. Failure to submit the needed corrections will prohibit the transfer of title for the current year. . . .

*Id.* at 131.

[5] On October 19, 2012, Mother executed a warranty deed (the "Second Deed") conveying Woodburn Farm to herself and Siblings as joint tenants with rights of survivorship. The Second Deed was filed with the Recorder and the Auditor on November 15, 2012. The Second Deed incorporated an attached legal description which described the correct boundaries of Woodburn Farm.[3]

[6] Mother died in February 2018. In October 2021, Siblings entered into an agreement to sell Woodburn Farm. "Liberty Title & Escrow Co. conducted a title search for closing on Woodburn Farm" and "would not insure title . . . because the First Deed and the Second Deed created a cloud on Woodburn Farm's title." Appellants' Appendix Volume III at 41. The sale was not completed.

[7] On January 28, 2022, Jay filed a complaint against Siblings alleging that he "maintain[ed] a 1/5th interest in the property and all proceeds thereof" and that he "never received his portion of the crop rent payments." Appellants' Appendix Volume II at 22. The complaint alleged unjust enrichment under Count I and conversion under Count II. Siblings filed a counterclaim alleging

---

[3] In his affidavit, Jordan stated the legal description attached to the Second Deed "could be re-traced or surveyed accurately, as demonstrated in Exhibit 2." Appellants' Appendix Volume II at 119. The attached Exhibit 2 depicts all the boundaries of the Woodburn Farm.

claims to quiet title under Count I, slander of title under Count II, and declaratory judgment for reformation under Count III.

[8] On October 31, 2022, Siblings filed a motion for partial summary judgment. They argued the court "should quiet title to Woodburn Farm in the Siblings' names because the First Deed convey[ed] nothing to Jay due to the invalid legal description" and "[t]he above is in addition to the Allen County Auditor's Office never accepting the First Deed nor transferring title to Woodburn Farm, the Will, and the execution of the Second Deed." *Id*. at 98. They argued, "[a]lternatively, the First Deed should be reformed to convey Woodburn Farm to the Siblings alone." *Id*. They asserted, "[b]ecause Mother conveyed Woodburn Farm as an inter-vivos gift, and Mother intended to exclude Jay from receiving any interest in Woodburn, the conveyance should . . . be reformed so that only the Siblings retain an interest in Woodburn Farm." *Id*. They requested summary judgment in their favor on Counts I and III of their counterclaim and dismissal of Jay's complaint.

[9] Jay filed a response and cross-motion for summary judgment. He argued that errors in a legal description did not render a deed void as a matter of law. He argued, "the mistake here would be a mistake of the legal effect of including [him] as among the grantees" and, "[e]ven assuming that such a mistake has been made in this case, the mistake is one of law, not one of fact" and "is not remediable in equity." *Id*. at 235-236. He requested summary judgment with respect to all counts in Siblings' counterclaim.

On March 14, 2023, the court held a hearing. The court ordered the parties to participate in mediation and stated that, if the matter was not settled, it would rule on the motions. On May 24, 2023, the mediator filed a report indicating the matter was not settled. On September 18, 2023, and again on May 20, 2024, Siblings filed requests with the trial court for a ruling on the summary judgment motions.

On July 10, 2024, the trial court issued an "Order on Motions for Summary Judgment." *Id*. at 13. The court denied Siblings' motion for summary judgment, granted Jay's motion for summary judgment, and dismissed Siblings' counterclaim. On May 30, 2025, the parties filed a joint motion to stay the proceedings and requested the court to direct entry of judgment as to less than all the issues, claims or parties, consistent with Ind. Trial Rule 56(C), as it related to the July 10, 2024 order. The motion stated the parties agreed that the amount in controversy was $15,426.65, Siblings agreed to pay that amount to the Clerk of Clark County until further order, and Jay agreed to dismiss his conversion claim. The court granted the motion and stayed the matter pending appeal.

## Discussion

We review summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). If the moving party

carries its burden, then the nonmoving party must come forward with evidence establishing the existence of the genuine issue of material fact. *Id.* Our review is limited to those materials designated to the trial court. *Mangold ex rel. Mangold v. Ind. Dep't of Nat. Res.*, 756 N.E.2d 970, 973 (Ind. 2001). The fact that the parties make cross motions for summary judgment does not alter our standard of review. *Musgrave v. Squaw Creek Coal Co.*, 964 N.E.2d 891, 900 (Ind. Ct. App. 2012), *trans. denied*.

[13] Siblings argue that Mother intended to and did convey Woodburn Farm to them and not to Jay. They argue the First Deed failed to convey any interest in Woodburn Farm due to the deficient legal description. They argue the Second Deed was executed in accordance with Mother's clear intent and was a valid conveyance. They point to her Will, Jeffrey's affidavit, the letter from the Auditor, and the steps taken by Mother to correct the First Deed. They argue Indiana law permits reformation of a gift deed based on unilateral mistake and the inclusion of Jay's name in the First Deed was a mistake of fact. They request instructions to enter summary judgment in their favor.

[14] Jay argues that errors in a legal description do not render a deed void as a matter of law. He asserts the trial court "found that while the incorrect legal description was a mistake of fact which could be reformed, the inclusion of [him] as among the grantees was a mistake of law which was not properly subject to reformation." Appellee's Brief at 10.

[15]   In *Wright v. Sampson*, 830 N.E.2d 1022 (Ind. Ct. App. 2005), this Court addressed the showing needed to reform a deed conveying property as a gift. In that case, Ray Wright ("Ray"), the father of Roger Wright ("Wright") and Rebecca Sampson, decided to divide a twenty-five acre parcel between Wright and Sampson. *Wright*, 830 N.E.2d at 1024. Ray intended that Wright should be given the eastern half of the property and Sampson would receive the western half. *Id*. Ray executed a deed to Sampson in May 1997 and a deed to Wright in September 1997, and the deeds were recorded. *Id*. Ray's counsel later learned that the deed to Sampson contained an incorrect property description and in fact conveyed the entire twenty-five acre parcel to Sampson. *Id*. He also determined that the deed to Wright contained an incorrect property description in that it conveyed to Wright the western half of the twenty-five acre parcel rather than the eastern half. *Id*. Sampson filed a complaint asking that title to the entire twenty-five acre parcel be quieted in her name, and Wright filed a counterclaim against Sampson requesting that the court reform his and Sampson's deeds to reflect Ray's true intentions. *Id*. at 1024-1025. The trial court concluded that Sampson's deed took priority over Wright's deed, Wright's counterclaim "for reformation of the deeds was without right and unfounded," and title to the twenty-five acre parcel should be quieted in Sampson's name. *Id*. at 1025.

[16]   On appeal, this Court stated that generally to succeed in a reformation action a party must show either mutual mistake or fraud by clear and convincing evidence. *Id*. at 1027. We observed, however, that Wright and Sampson's

deeds were given to them as gifts and they gave no consideration for the deeds. *Id*. at 1024. We noted that, "[i]n reformation cases, courts in other states have drawn a distinction between deeds that are given in exchange for some type of compensation, and thus are contractual in nature, and those that are given as gifts." *Id*. at 1027. "Based on this distinction, several courts have concluded that a deed may be reformed for a unilateral mistake made by the grantor where the property is conveyed as a gift." *Id*. (collecting cases).[4] We also observed that, in *Andrews v. Andrews*, 12 Ind. 348 (1859), the grantor, Andrews, gave certain property to his mother, the grantee, as a gift. *Wright*, 830 N.E.2d at 1028. The deed gave title to the mother in fee simple. *Id*. Andrews alleged that this was a mistake and that the mother should only have received a life estate in the property. *Id*. Andrews filed suit for reformation of the deed, but the trial court dismissed his complaint. *Id*. The Indiana Supreme Court reversed the trial court's decision. *Id.* (citing *Andrews*, 12 Ind. at 349). The Indiana Supreme Court stated, "It is a general proposition of law, that a deed drawn by mistake, for a different interest than that intended to be conveyed, may be corrected, if the mistake be clearly proved. We do not see why a deed of gift should form an

---

[4] *See Wright*, 830 N.E.2d at 1027-1028 (citing *Yano v. Yano,* 144 Ariz. 382, 697 P.2d 1132, 1135 (1985) (holding that reformation of a deed may be granted on the application of the grantor of a voluntary conveyance on the basis of a unilateral mistake); *Davidson v. Lane*, 566 S.W.2d 891, 892 (Tenn. Ct. App. 1978) (holding that a court of equity will reform a voluntary conveyance made without consideration, to reflect the intention of the grantor); *Westcott v. Westcott*, 259 N.W.2d 545, 548 (Iowa Ct.App.1977) (holding that voluntary conveyances are unilateral and that a trial court has the power to reform a deed to express the intentions of the grantor even though there has been no mutual mistake); *Nelson v. Harris*, 32 N.C. App. 375, 232 S.E.2d 298, 300 (1977) (holding that the grantor of a conveyance for which no consideration was given by the grantee is entitled to reformation when the deed fails to express the actual intent of the parties due to the grantor's unilateral mistake)).

exception." *Id.* (quoting *Andrews*, 12 Ind. at 348-349 (citation omitted)). We also noted that "[t]he federal district court for the Southern District of Indiana . . . considered the *Andrews* opinion and concluded that '[a]t most, *Andrews* stands for the proposition that a unilateral mistake is a sufficient ground for reformation of a voluntary conveyance of property if the mistake can be clearly proved.'" *Id.* (quoting *Seufert v. Mulzer*, 2000 WL 1358527, *5 (S.D. Ind. 2000)). We stated that we "agree with this conclusion and therefore hold that a deed given as a gift can be reformed if the party seeking reformation of the deed proves by clear and convincing evidence that a unilateral mistake was made in the execution of the deed." *Id.* We reversed and remanded for proceedings on Wright's counterclaim for reformation. *Id.* at 1030.[5]

[17] Here, the designated evidence establishes that the legal description contained in the First Deed did not correctly describe the boundaries of the Woodburn

---

[5] *See also* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 11 (2011) ("(1) A donor who transfers something more than or different from the intended gift, *or whose gift is made to someone other than the intended donee*, has a claim in restitution as necessary to prevent the unintended enrichment of the recipient. . . . (3) If a donor attempts to make a gift and dies or becomes incapacitated in the belief that the gift has been perfected, and as a result of mistake the attempted gift (a) is wholly or partly ineffective; (b) transfers something other than the property intended; or (c) *transfers property to someone other than the intended donee*; the intended donee has a claim in restitution as necessary to prevent the unjust enrichment of the unintended recipient or of the donor's successors, as the case may be.") (emphases added); Comment a. to RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 11 ("In the numerous cases where a mistaken gift involves a conveyance of real property, *the claimant may seek cancellation or reformation of the deed to give effect to the donor's actual intent.* (Many of the following Illustrations describe such a remedy.)") (emphasis added); Comment d. to § 11 ("Illustrations: . . . 19. Intending to make a gift of Blackacre to A, Donor by mistake conveys the land to B, then dies without learning of the mistake. A has a claim in restitution against B to obtain the intended gift. The usual remedy will be an order either reforming the deed or declaring that B holds in constructive trust for A."); and *Reformation of Voluntary Deed for Grantor's Mistake As to Amount of Land or Nature of Interest Conveyed*, 65 AM. JUR. PROOF OF FACTS 3d 217 ("[M]any courts . . . with respect to a voluntary conveyance, hold[] that reformation may be granted on the application of the grantor of a voluntary conveyance on the basis of unilateral mistake alone.").

Farm. The deficiencies in the legal description were significant, such that it "did not describe a parcel of land that . . . could [be] accurately re-trace[d] or survey[ed]." Appellants' Appendix Volume II at 118-119. Further, the designated evidence supports the conclusion that Mother intended to convey Woodburn Farm as a gift to Siblings and not to Jay. Mother informed Jeffrey of her intent. Her Will, executed within a short time after the First Deed, further reflected her intent that Jay not receive an interest in the property. Then, a letter from the Auditor noted that the First Deed contained several errors and asked Mother to "submit a corrective deed so [the Auditor] may finish processing [her] request." *Id.* at 131. Thereafter, Mother executed such a corrective deed—the Second Deed—and filed it with the Recorder and Auditor.

[18] Siblings presented clear and convincing evidence of unilateral mistake in the First Deed and that both corrections made by the Second Deed—correcting the intended donees of her gift and correcting the legal description of Woodburn Farm—reflected Mother's actual intent in making the gift to Siblings. Jay does not point to designated evidence establishing the existence of a question of fact as to the intent of Mother as the donor. In light of the errors in the First Deed, Mother's Will, the Auditor's letter, and Mother's Second Deed conveying Woodburn Farm to Siblings as joint tenants with rights of survivorship, we conclude reversal is warranted.[6]

---

[6] To the extent Jay asserts that Mother's mistake in including him in the First Deed was a mistake of law and thus Siblings may not seek cancellation or reformation of the deed to give effect to the donor's intent, we

For the foregoing reasons, we reverse and remand with instructions to grant Siblings' motion for summary judgment, deny Jay's motion for summary judgment, dismiss Jay's complaint, issue an order that the First Deed did not convey any interest in Woodburn Farm to Jay, and enter any further necessary orders consistent with this opinion.

Reversed and remanded.

Felix, J., and Scheele, J., concur.

ATTORNEYS FOR APPELLANTS

Jared P. Baker
Matthew A. Senko
Burt, Blee, Dixon, Sutton & Bloom, LLP
Fort Wayne, Indiana


ATTORNEY FOR APPELLEE

Robert W. DeWees III
McClain DeWees, PLLC
Jeffersonville, Indiana

---

disagree. The designated evidence does not suggest that Mother misunderstood the law, such as the legal effect of executing a deed as an instrument to convey an interest in real property. *Cf. Fox v. Barker*, 170 N.E.3d 662, 665-667 (Ind. Ct. App. 2021) (deed not subject to reformation where grantor sought to set aside conveyance based on a misunderstanding of the legal effect of a deed). Also, we have noted that, "in *Carlson v. Sweeney, Dabagia, Donoghue, Thorne, Janes & Pagos*, 895 N.E.2d 1191, 1199 (Ind. 2008), the Supreme Court held that with regard to testamentary trusts, reformation is appropriate whether [sic] the testator's intent has not been effectuated, regardless of whether the underlying mistake is a mistake of fact or law." *Hardy*, 910 N.E.2d at 859 n.6.